```
 1                 UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
 2                        MIAMI DIVISION
                CASE NO. 15-20264-CRIMINAL-LENARD
 3

 4   UNITED STATES OF AMERICA,          Miami, Florida

 5                 Plaintiff,           May 27, 2015

 6          vs.                         3:18 p.m. to 3:36 p.m.

 7   MIGUEL MORÁN DÍAZ,

 8                 Defendant.           Pages 1 to 18
     _____

 9

10                        CHANGE OF PLEA
               BEFORE THE HONORABLE JOAN A. LENARD,
11                 UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14

     FOR THE GOVERNMENT:       MARC ANTON, ESQ.
15                             ASSISTANT UNITED STATES ATTORNEY
                               99 Northeast Fourth Street
16                             Miami, Florida 33132

17

     FOR THE DEFENDANT:        DANIEL ECARIUS, ESQ.
18                             ASSISTANT FEDERAL PUBLIC DEFENDER
                               150 West Flagler Street
19                             Miami, Florida 33130

20

     REPORTED BY:              LISA EDWARDS, RDR, CRR
21                             Official Court Reporter
                               United States District Court
22                             400 North Miami Avenue
                               Twelfth Floor
23                             Miami, Florida 33128
                               (305) 523-5499
24

25
```

```
 1              THE COURT:  Good afternoon.  You may be seated.
 2              United States of America versus Miguel Morán Díaz, Case
 3    No. 15-20264.
 4              Good afternoon, counsel.  State your appearances,
 5    please, for the record.
 6              MR. ANTON:  Good afternoon, your Honor.  Marc Anton on
 7    behalf of the United States.  With me at counsel table is
 8    Special Agent David Clancy of the FBI.
 9              THE COURT:  Good afternoon.
10              MR. ECARIUS:  Good afternoon, your Honor.  Daniel
11    Ecarius of the Federal Defender's Office on behalf of Mr. Morán
12    Díaz.
13              THE COURT:  Good afternoon.
14              He is set for a change of plea today?
15              MR. ECARIUS:  Yes, your Honor.
16              THE COURT:  Is there a plea agreement?
17              MR. ECARIUS:  No, there's not.
18              THE COURT:  He's pleading straight up to the
19    indictment?
20              MR. ECARIUS:  That's correct.
21              THE COURT:  Place him under oath, please.
22              (Whereupon, the Defendant was duly sworn.)
23              THE COURT:  You may be seated.
24              Do you understand that you are now under oath and if
25    you answer any of my questions falsely, your answers may later
```

1    be used against you in another prosecution for perjury or for

2    making a false statement?

3              THE DEFENDANT:  Yes.  Yes, ma'am.

4              THE COURT:  What is your full name?

5              THE DEFENDANT:  Miguel Morán Díaz.

6              THE COURT:  Have you been known by any other name or

7    names?

8              THE DEFENDANT:  Yes, ma'am.  Azizi al-Hariri, my

9    religious name.

10             THE COURT:  What is your age?

11             THE DEFENDANT:  45.

12             THE COURT:  Could you explain your education?  What was

13   the last grade you completed in school?

14             THE DEFENDANT:  I have some college.

15             THE COURT:  Are you currently under the influence of

16   any drug or medication or alcoholic beverage?

17             THE DEFENDANT:  No, your Honor.

18             THE COURT:  Within the last 24 hours, have you used any

19   drug, medication or alcoholic beverage?

20             THE DEFENDANT:  No, your Honor.

21             THE COURT:  Have you recently been under the care of a

22   doctor or a psychiatrist?

23             THE DEFENDANT:  No, your Honor.

24             THE COURT:  Have you recently been hospitalized for any

25   reason, including the use of narcotics, medicine, drugs or

1   alcohol?

2          THE DEFENDANT:  No, your Honor.

3          THE COURT:  The ability to understand the charges

4   brought against you:  Has that ability been affected at any

5   time by the use of any drug, medication or alcoholic beverage?

6          THE DEFENDANT:  Say that again.

7          THE COURT:  Sure.

8          The ability to understand the charges that were brought

9   against you:  Has that ability to understand the charges been

10  affected at any time by the use of any drug, medication or

11  alcoholic beverage?

12         THE DEFENDANT:  No.  No, ma'am.

13         THE COURT:  The ability to understand the explanations

14  and advice given to you by your lawyer:  Has that ability been

15  affected at any time by the use of any drug, medication or

16  alcoholic beverage?

17         THE DEFENDANT:  No.

18         THE COURT:  Have you read a copy of the indictment,

19  which sets forth the written charges made against you in this

20  case?

21         THE DEFENDANT:  Yes, ma'am.

22         THE COURT:  Do you understand that you have the right

23  to plead not guilty to any offense charged against you and to

24  persist in that plea?

25         THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand that you would then have

2    the right to a trial by jury in which you would be assisted by

3    a lawyer in your defense and at which you would have the right

4    to see and hear all of the witnesses who would testify against

5    you and have them cross-examined in your defense?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that at a trial, the

8    Government cannot force you to testify unless you voluntarily

9    do so in your own defense?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Do you understand that, should you decide

12   not to testify at trial or put on any evidence at trial, that

13   these facts cannot be used against you at trial?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Do you understand that the decision to

16   testify or not testify at trial is your decision and your

17   decision alone?

18         THE DEFENDANT:  Yes, ma'am.

19         THE COURT:  Do you understand that you would have the

20   right to have subpoenas issued to witnesses to compel them to

21   attend the trial and testify on your behalf?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do you understand that the Government would

24   have to prove beyond a reasonable doubt at trial the essential

25   elements of the offenses charged against you?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  And do you also understand that all 12

3    jurors must unanimously agree before a finding of guilty could

4    be made?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you understand that if you were

7    convicted at trial, you would have the right to appeal my

8    rulings at trial and your conviction?

9          THE DEFENDANT:  Understood.  Yes.

10         THE COURT:  Do you further understand that if you enter

11   pleas of guilty and if I accept your pleas of guilty, there

12   will be no trial and you will have waived or given up your

13   rights to a trial as well as the various rights associated with

14   the trial I've just described?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  You are charged by indictment in Count 1

17   that on or about April 2nd, 2015, in Miami-Dade County, in the

18   Southern District of Florida, the Defendant, Miguel Morán Díaz,

19   having previously been convicted of a crime punishable by

20   imprisonment for a term exceeding one year, did knowingly

21   possess a firearm and ammunition in and affecting interstate

22   and foreign commerce in violation of Title 18, United States

23   Code, Section 922(g)(1).

24         It is further alleged that the firearms and ammunition

25   are:  (a), a .40-caliber Springfield XD(M) handgun bearing

1    serial number MG224450; (b), .a 40-caliber Kel-Tec 2000 rifle

2    bearing serial number E6848; and, (c), 327 rounds of

3    .40-caliber ammunition.

4         On the forfeiture count:  Upon conviction of any

5    violation of Title 18, United States Code, Section 922(g)(1),

6    the Defendant shall forfeit to the United States any firearm

7    and ammunition involved in or used in the commission of said

8    violation.

9         The property subject to forfeiture includes, but is not

10   limited to:  (a), a .40-caliber Springfield XD(M) handgun

11   bearing serial number MG224450; (b), a .40-caliber Kel-Tec 2000

12   rifle bearing serial number E6848; and, (c), 327 rounds of

13   .40-caliber ammunition, all pursuant to Title 28, United States

14   Code, Section 2461; Title 18, United States Code,

15   Section 924(d)(1); and Title 21, United States Code, Section

16   853.

17        Would counsel for the Government make a representation

18   concerning the facts the Government is prepared to prove at

19   trial, please.

20        MR. ANTON:  Yes, your Honor.

21        Had the United States proceeded to trial in the instant

22   case, the Government would have proven beyond a reasonable

23   doubt that on or about April 2nd, 2015, in Miami-Dade County,

24   in the Southern District of Florida, the Defendant, Miguel

25   Morán Díaz, having previously been convicted of a crime

1   punishable by imprisonment for a term exceeding one year, did

2   knowingly possess a firearm and ammunition in and affecting

3   interstate and foreign commerce, that is, a .40-caliber

4   Springfield XD(M) handgun, bearing serial number MG224450; a

5   .40-caliber Kel-Tec 2000 rifle, bearing serial number E6848;

6   and approximately 327 rounds of .40-caliber ammunition, in

7   violation of Title 18, United States Code, Section 922(g)(1).

8           Specifically, in the instant case, pursuant to an

9   ongoing terrorism investigation, on April 2nd, 2015, a search

10  warrant was issued by a United States magistrate authorizing

11  the search of both Díaz's residence located at 1629 Northwest

12  14th Street, Apartment 5010, Miami, Florida 33125 as well as

13  his 2014 white Chevrolet, bearing VIN No. 1G1PH5SB9E7242179 and

14  displaying Florida tag number BGFS29.

15          Later that same day, special agents of the FBI

16  conducted surveillance in the area near 1629 Northwest 14th

17  Street, Miami, Florida.  And at approximately 4:50 p.m.,

18  special agents observed Díaz enter his 2014 white Chevrolet

19  displaying Florida tag number BGFS29, the target vehicle.

20          The target vehicle then left the parking area and was

21  stopped by FBI agents pursuant to the previously mentioned

22  search warrant.

23          Díaz was thereafter removed from the vehicle, wherein

24  agents observed a Springfield XD(M) .40-caliber handgun bearing

25  serial number MG224450 in his waistband, loaded with 15 rounds

1   of .40-caliber ammunition.  A further search of Díaz revealed

2   that he had also had a .40-caliber handgun magazine in his

3   pocket loaded with 15 additional rounds of .40-caliber

4   ammunition.

5           Shortly thereafter, FBI agents conducted a search of

6   Díaz's residence located at 1629 Northwest 14th Street,

7   Apartment 510, Miami, Florida.  During the search, agents

8   recovered a Kel-Tec 2000 .40-caliber rifle bearing serial

9   number E6848 and approximately 297 rounds of .40-caliber

10  ammunition.  These items were recovered from a bedroom that was

11  utilized by Díaz and contained his personal property and

12  identity documents.

13          Díaz was thereafter transported to the FBI Miami field

14  office for booking.  In a post-Miranda statement, Díaz

15  identified both the Springfield handgun recovered from his

16  waistband and the Kel-Tec rifle recovered from his house along

17  with ammunition as all being owned and possessed by him.

18          Díaz stated that he was aware that he was not supposed

19  to own or possess weapons due to his prior felony conviction

20  and that he had purchased the weapons from private individuals

21  to avoid scrutiny.  Díaz also noted he purchased the ammunition

22  from local gun stores.

23          Court records have confirmed that Díaz is a convicted

24  felon and that he was convicted on September 20, 2005, for

25  possession with intent to deliver cocaine in violation of Title

1   21, United States Code, Section 841, under Southern District of

2   Florida Federal Case No. 05-20216-CR-Highsmith.  Moreover,

3   agents have confirmed that the recovered ammunition, as well as

4   both the Springfield XD(M) .40-caliber handgun and the Kel-Tec

5   2000 rifle, have all traveled in or affected interstate

6   commerce.

7           THE COURT:  Do you understand the charges against you?

8           THE DEFENDANT:  Yes, ma'am.

9           THE COURT:  Do you admit or not admit the facts as

10  stated by the prosecutor?

11          THE DEFENDANT:  All the information is accurate.

12          THE COURT:  Is this your signature on the written

13  factual proffer?

14          THE DEFENDANT:  Yes.  Yes, your Honor.

15          THE COURT:  Did you read the written factual proffer

16  before you signed it?

17          THE DEFENDANT:  Absolutely.

18          THE COURT:  Did you fully discuss the written factual

19  proffer with your attorney before you signed it?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Did you understand the written factual

22  proffer before you signed it?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Did you sign the written factual proffer

25  freely and voluntarily?

```
1              THE DEFENDANT:  Voluntarily.

2              THE COURT:  And freely?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Do you have any deletions or corrections to

5    what was stated in open court or what's contained in the

6    written factual proffer?

7              THE DEFENDANT:  Well, all the information on that

8    proffer -- factual proffer is correct.

9              THE COURT:  How do you wish to plead to the indictment:

10   guilty or not guilty?

11             THE DEFENDANT:  Guilty.

12             THE COURT:  Are you pleading guilty because you are

13   guilty?

14             THE DEFENDANT:  Yes.  Yes, I am.

15             THE COURT:  Do you understand that the maximum possible

16   penalty of confinement provided by law for the offense to which

17   you plead guilty is ten years' imprisonment?

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  In addition, following a term of

20   imprisonment, the Court may impose a term of supervised

21   release.  Such term of supervised release shall commence upon

22   release from imprisonment.

23             The maximum amount of time in supervised release in

24   this matter is three years.  Do you understand that as well?

25             THE DEFENDANT:  Yes.
```

1          THE COURT:  Do you understand that if you violate the

2     conditions of supervised release, you can be given additional

3     time in prison?

4          THE DEFENDANT:  Absolutely.

5          THE COURT:  The maximum fine that may be imposed

6     against you for this offense is up to $250,000.  The Court may

7     sentence you to serve a sentence of confinement and also assess

8     a fine against you.

9          Do you understand that as well?

10         THE DEFENDANT:  Yes.

11         THE COURT:  In addition to the penalties of confinement

12     and fines, you may be ordered to make restitution and you will

13     be required to pay a special assessment of $100.

14         Do you understand that as well?

15         THE DEFENDANT:  Yes.  Yes, ma'am.

16         THE COURT:  Do you understand that the offense to which

17     you plead guilty is a felony offense?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Do you understand that if your plea of

20     guilty is accepted, you will be adjudicated guilty of that

21     offense?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  Are you a citizen of the United States?

24         THE DEFENDANT:  No.

25         THE COURT:  Where are you a citizen?

1        THE DEFENDANT:  Cuba.

2        THE COURT:  Do you understand that if you are not a

3   citizen of the United States, such adjudication may subject you

4   to removal proceedings by the United States Immigration and

5   Customs Enforcement pursuant to United States law, and you may

6   be removed from the United States and/or other immigration

7   consequences?

8        THE DEFENDANT:  Yes.  I'm aware.

9        THE COURT:  Have you discussed these immigration

10  consequences with your attorney?

11       THE DEFENDANT:  Yes.

12       THE COURT:  And are you satisfied with his services?

13       THE DEFENDANT:  Yes, ma'am.

14       THE COURT:  Do you understand that the provisions of

15  the sentencing guidelines promulgated by the United States

16  Sentencing Commission will advise the Court in this matter?

17       THE DEFENDANT:  Yes.

18       THE COURT:  Have you and your attorney talked about how

19  the sentencing guidelines might apply to your case?

20       THE DEFENDANT:  Absolutely.

21       THE COURT:  Do you understand that the Court will not

22  be able to determine the advisory guideline range for your

23  sentence until after the advisory presentence investigation

24  report has been completed and you and the Government have had

25  the opportunity to challenge the reported facts and the

```
 1   application of the guidelines as recommended by the probation
 2   officer?
 3           THE DEFENDANT:  I understand.  Yes.
 4           THE COURT:  Do you understand that the Court will
 5   consider all of the sentencing factors provided by law,
 6   including the sentencing guidelines?
 7           THE DEFENDANT:  Yes.
 8           THE COURT:  Do you understand that after considering
 9   all of these factors, the Court will impose a sentence it finds
10   appropriate up to the statutory maximum?
11           THE DEFENDANT:  Yes, ma'am.
12           THE COURT:  Do you understand that the sentence imposed
13   may be different from any estimate your attorney may have given
14   you?
15           THE DEFENDANT:  Yes.
16           THE COURT:  Do you understand that parole has been
17   abolished and that if you are sentenced to prison, you will not
18   be released on parole?
19           THE DEFENDANT:  Yes.
20           THE COURT:  Do you understand that under some
21   circumstances, you or the Government may have the right to
22   appeal any sentence that I impose?
23           THE DEFENDANT:  Yes.
24           THE COURT:  Are your pleas of guilty being made freely
25   and voluntarily?
```

```
 1              THE DEFENDANT:  Yes, ma'am.

 2              THE COURT:  Has anyone forced or threatened or coerced

 3    you to plead guilty?

 4              THE DEFENDANT:  No.

 5              THE COURT:  Has anyone made any representations to you

 6    to convince you to plead guilty?

 7              THE DEFENDANT:  No, ma'am.

 8              THE COURT:  Are you satisfied with your attorney?

 9              THE DEFENDANT:  Yes.  Certainly.

10              THE COURT:  Have you had adequate time to fully confer

11    with your attorney and he with you about these charges, these

12    proceedings and all matters relating to these charges?

13              THE DEFENDANT:  Yes.

14              THE COURT:  Mr. Ecarius, are you satisfied that

15    pleading guilty to the charges is in the best interest of your

16    client, considering all the circumstances in this case?

17              MR. ECARIUS:  Yes, your Honor.

18              THE COURT:  And do you feel that there would be

19    sufficient evidence upon which to convict the Defendant of

20    these charges?

21              MR. ECARIUS:  Yes.

22              THE COURT:  Mr. Morán Díaz, do you have any questions,

23    sir, about the possible consequences of your pleas of guilty?

24              THE DEFENDANT:  No, ma'am.

25              THE COURT:  Do you understand fully all of the possible
```

1    consequences of your pleas of guilty?

2             THE DEFENDANT:  Yes, ma'am.

3             THE COURT:  It is the finding of the Court in the case

4    of the United States of America versus Miguel Morán Díaz that

5    the Defendant is fully competent and capable of entering

6    informed pleas; that the Defendant is aware of the nature of

7    the charges and the consequences of the pleas; and that the

8    pleas of guilty are knowing and voluntary pleas supported by

9    independent bases in fact containing each of the essential

10   elements of the offenses.

11            The pleas are therefore accepted and the Defendant is

12   now adjudicated guilty of the indictment.

13            A written advisory presentence investigation report

14   will now be prepared by the probation office to assist the

15   Court in sentencing.  You will be asked, sir, to give

16   information for the report, and your attorney may be present if

17   you wish.

18            The Court shall permit the Defendant and counsel to

19   read the advisory presentence investigation report and file any

20   objections to the report before the sentencing hearing.

21            And I note for counsel that I have a new .pdf order

22   which sets forth the procedures and timing for the filing of

23   objections as well as any motions for upward or downward

24   variance or departures.

25            The Defendant and his counsel shall be afforded the

1   opportunity to speak on behalf of the Defendant at the

2   sentencing hearing.

3          At this time, I'm going to refer the Defendant to the

4   probation office for an advisory presentence investigation

5   report.

6          He's to be remanded to the Bureau of Prisons pending a

7   sentencing date and time which Ricky will give to us now.

8          THE COURTROOM DEPUTY:  July 27th, 2015, at 3:30 p.m.

9          THE COURT:  Any other issues or matters the Court needs

10  to take up in regard to this case at this time?

11         MR. ANTON:  Nothing from the Government, your Honor.

12  Thank you.

13         MR. ECARIUS:  Nothing, your Honor.  Thank you.

14         THE COURT:  Thank you.

15         We're in recess in this matter.

16         (Proceedings concluded.)

17

18

19

20

21

22

23

24

25

18

1

                        C E R T I F I C A T E

2

3            I hereby certify that the foregoing is an

4     accurate transcription of the proceedings in the

5     above-entitled matter.

6

7

                          /s/Lisa Edwards
8     _____      LISA EDWARDS, RDR, CRR
         DATE             Official Court Reporter
9                         United States District Court
                          400 North Miami Avenue, Twelfth Floor
10                        Miami, Florida 33128
                          (305) 523-5499
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25